IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **DARRELL R. BEAVERS,** | ) | |
| Plaintiff, | ) ) | Case No. 1:10CV00040 |
| v. | ) ) ) | **OPINION** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,** | ) ) ) ) | By: James P. Jones United States District Judge |
| Defendant. | ) ) | |

*Gerald F. Sharp, Lebanon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Alexander L. Cristaudo, Assistant Regional Counsel, and Charles J. Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I affirm the final decision of the Commissioner.

I

Plaintiff Darrell R. Beavers filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") and social security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§

401-433, 1381-1383d (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Beavers filed for benefits in September 2006, alleging disability since November 15, 2005, due to a degenerating right shoulder rotator cuff, respiratory issues, and depression. His claim was denied initially and upon reconsideration. Beavers received a hearing before an administrative law judge ("ALJ"), during which Beavers, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied Beavers' claim and the Social Security Administration's Appeals Council denied his Request for Reconsideration.[1] Beavers then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed and orally argued the issues. The case is ripe for decision.

II

Beavers was fifty-two years old when he filed for benefits, a person "closely approaching advanced age" under the regulations. *See* 20 C.F.R. § 404.1563(d) (2010). Beavers, who has a high school level of education and his GED, has

---

[1] Upon rejection of his claims, Beavers reapplied, and was granted benefits. Thus, the current appeal relates to Beavers' claims for the bounded period of November 15, 2005,through the date of the ALJ's decision on December 27, 2007.

previously worked as a heavy equipment operator in the coal industry. Beavers has not engaged in substantial gainful activity since June 2006.

Beavers alleges disability primarily due to a rotator cuff tear in his right shoulder. He also suffers from osteoarthritis and respiratory problems. Since August 2004, Beavers' primary care has been provided by Samina Yousuf, M.D., and orthopedist, T. Lisle Whitman, M.D. Dr. Yousuf treated Beavers for an extended period of years for shoulder pain, but after conservative options such as rest, anti-inflammatory injections, and physical therapy failed to alleviate his symptoms, Dr. Yousuf referred him for surgery. Dr. Whitman performed two surgeries to repair tears in Beavers' rotator cuff in November 2005 and August 2006.

Following the shoulder surgeries, Beavers presented to his treating physicians for follow-up consultations. In late 2006 and early 2007, Beavers reported that his shoulder felt better following surgery and examination showed improvement. Although Beavers still lacked a full range of motion and experienced some weakness, Dr. Whitman encouraged Beavers to increase his activities as tolerated and report back for a follow-up evaluation in two months. Dr. Yousuf similarly indicated that Beavers could return to work after his shoulder showed improvement. The primary concern of both doctors was their worry that Beavers would be "over aggressive" following surgery and that he risked re-tearing his repair if he overused

his shoulder. (R. at 280.) Dr. Whitman ultimately concluded that Beavers' shoulder was "stable," but that further repair was unlikely to help him. (R. at 348.)

In November 2006, Dr. Yousuf completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form on Beavers' behalf. Dr. Yousuf opined that Beavers suffered from severe exertional limitations, including a total inability to lift more than five pounds as a result of his rotator cuff tears or to push or pull more than twenty pounds. Finally she noted that Beavers was in "constant pain," "losing strength," and "markedly limited" in his range of motion. (R. at 315.) Dr. Yousuf completed the same form in October 2007 and November 2007, reporting similar limitations to Beavers' residual functional capacity.

Beavers also sought treatment for respiratory problems from Dr. Yousuf and the Russell County Medical Center in 2006 and 2007. Examinations and testing showed functional complications consistent with Beavers' smoking habit, but no diagnoses of significant impairments to Beavers' residual functional capacity.

Through this period, Beavers' record also contains complaints of mental impairment. In June 2006, Dr. Yousuf diagnosed Beavers with depressive disorder, status improving. She later adjusted this diagnosis as a chronic, but controlled depressive disorder, and prescribed medicative treatment. In September 2006, Beavers reported improvements to his mental state. However, according to

his wife, Beavers' depression thereafter worsened in the following months. Dr. Whitman noted that Beavers' depression was likely contributed to by situational stressors related to Beavers' shoulder and his employment situation, and that such a reaction was to be expected under the circumstances.

In March 2007, Beavers sought a consultative evaluation of his psychological status from Robert C. Miller, Ed.D, in support of his disability application. Dr. Miller's evaluation showed that Beavers suffered from poor sleep, suicidal ideations, panic attacks, and feelings of worthlessness, triggered by his inability to work. Although Dr. Miller found that Beavers' ability to attend and concentrate was impacted when emotionally upset, he also noted that Beavers was generally logical, coherent, and cooperative. Dr. Miller diagnosed major depressive disorder — moderate, panic disorder without agoraphobia, and a GAF score of 50.[2]

In October 2006, Beavers' records were reviewed by a state agency physician and a state agency psychologist. Frank M. Johnson, M.D., completed a physical

---

[2] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

residual functional capacity assessment and noted limitations in Beavers' ability to occasionally and frequently lift and/or carry items over twenty pounds. He also limited Beavers to standing or sitting for about six hours in an eight-hour workday, and found Beavers to be limited in his upper extremities. Dr. Johnson found that Beavers was partially credible, based on Beavers' symptoms and his aggressive pursuit of treatment. However, Dr. Johnson also noted that surgery had "significantly improve[d]" Beavers' symptoms, and that Beavers was not attending physical therapy or using assistive devices for his condition.

E. Hugh Tenison, Ph.D., a state agency psychologist, reviewed Beavers' medical records and found that Beavers' suffered from the medically determinable impairments of depressive disorder, non-specific, and sleep disturbance. Dr. Tenison, however, found that these conditions resulted only in mild impairments in Beavers' abilities to maintain social functioning, concentration, persistence, and pace, and no restrictions on his activities of daily living or periods of decompensation. Dr. Johnson's and Dr. Tenison's assessments were substantially confirmed by a second round of agency reviews conducted in February 2007.

After reviewing the record, the ALJ found that Beavers suffered from the severe impairment of a right shoulder rotator cuff failure with two surgeries, but that his allegations regarding his pain from this condition were not entirely credible.

The ALJ further found that Beavers' other alleged impairments, including his complaints of depression and respiratory problems were not severe, as the record contained insufficient evidence to show that they would have more than a minimal effect on his ability to work. The ALJ noted that despite his claims of mental impairment, Beavers never sought treatment from a mental-health professional and that his symptoms were found to have improved with medicative treatment. Taking Beavers' severe impairments into account, the ALJ found that Beavers did not suffer from an impairment or combination of impairments that would be at listing level.

The VE testified that someone with Beavers' residual functional capacity, age, and work history could perform a range of light level work in occupations such as production inspector, parking cashier, and unarmed night guard. According to the VE, there are approximately 19,500 jobs in the region and 195,000 jobs in the national economy. Relying on this testimony, the ALJ concluded that Beavers was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Beavers now challenges the ALJ's unfavorable ruling, arguing that the decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

## III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A) (2010).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared

with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

On appeal, Beavers argues that substantial evidence does not support the ALJ's ruling that he is not disabled under the Act. Specifically, Beavers argues that

the ALJ failed to give proper weight to the opinion of Dr. Yousuf, failed to fairly take into consideration Beavers' mental impairments, and erred in finding that Beavers' claims were not entirely credible.

Beavers presented evidence of a long-term rotator cuff injury that has been resistant to physical therapy, medicative treatment, and surgetical intervention. Beavers also asserts nonexertional impairments related to depression, anxiety, and difficulty sleeping. Beavers has been under consistent and long-term physical and medicative care for his shoulder problems for many years and also has made some complaints to his primary treating sources regarding secondary depression resultant from his shoulder problems. However, while Beavers' shoulder injury has obviously affected him, I cannot fault the ALJ's finding that this injury did not render him disabled as defined under the Act.

First, Beavers argues that the ALJ improperly accorded little weight to the opinion of Dr. Yousuf. As a preliminary matter, this contention is not entirely accurate. Reviewing the ALJ's decision, it is clear that what the ALJ discredited was not Dr. Yousuf's findings in their entirety, but rather the conclusions she made in her checklist medical source statements. (R. at 27.) The ALJ found that the opinions in those checklists were inconsistent with Dr. Yousuf's own treatment records and those of Dr. Whitman. He specifically pointed to inconsistencies in Dr.

Yousuf's records where she found limitations in Beavers' knees, hips, and extremities, but which were not supported by her physical examinations of Beavers. (*Id*. 27-28.)

A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A medical opinion in the form of a checklist may be appropriately granted less weight when it "lack[s] narrative substance to explain the severity of the limitations found." *Berube v. Astrue*, No. 6:10CV004, 2011 WL 824616, at *6 (W.D. Va. Feb. 3, 2011), *adopted,* 2011 WL 806520 (W.D. Va. Mar. 2, 2011).

In the present case, the ALJ may have accorded little weight to Dr. Yousuf's summary checklist conclusions, but it is clear that he accepted Dr. Yousuf's findings where they comported with the overall record. The ALJ carefully accommodated Beavers' limitations in his residual functional capacity assessment. Although Beavers' shoulder injury limited his physical capacities, especially in regard to the heavy skilled work that he formerly performed in the coal industry, substantial

evidence shows that the injury did not prevent him from performing a range of a light exertion work.

These facts also bear on Beavers' contention that the ALJ erred in finding Beavers' claims less than fully credible. The ALJ noted that Beavers' allegations of a severely weakened arm and a highly restricted range of motion did not comport with the overall record. The ALJ also noted that, in fact, Beavers returned to work following his surgery, but that changes in his job duties and an unavailability of light range work at his employer prompted Beavers to elect early work retirement. The ALJ also noted that Beavers at one point expressed concern to Dr. Whitman that his job requirements were changing and that his shoulder injury could affect his ability to perform that work. Finally, the ALJ noted that Beavers continues to participate in his daily living activities, including volunteering with his local emergency response team. Given these facts, the ALJ questioned whether Beavers' disability claim was grounded in a total inability to work, or rather, an inability to continue in the field in which Beavers has engaged for a substantial number of years.

I must grant the ALJ great deference regarding credibility determinations, and here, I find that the ALJ's assessment of Beavers' claims of pain and functional limitations is supported by substantial evidence on the record. I am sensitive to the fact that Beavers has "worked most of [his] life in the coal industry" (R. at 336) and

that his "good work history may be deemed probative of credibility." *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). However, the standard of disability is strict, and it is not solely determined by whether the claimant can perform the skills of his prior employment. *See* SSR 82-41; 20 C.F.R. Pt. 404, Subpt. P, App'x 2. For these reasons, I cannot overrule the ALJ's assessment of Beavers' credibility.

Finally, Beavers argues that the ALJ did not properly account for his mental impairments. Like the ALJ, I note that Beavers never sought specialized mental health treatment or pursued treatment beyond the minimal care provided by his primary care physician. Many of the complaints of depression contained in Beavers' record were actually made by Beavers' wife, and not by Beavers himself. Finally, the only formal evaluation Beavers sought was Dr. Miller's one-time consultative opinion, and even that opinion does not support a finding of severe impairment. Coupled with the ALJ's questions regarding Beavers' overall credibility, I find that the ALJ was within his discretion to find that Beavers' mental impairments were not severe.

For all these reasons, I find that Beavers' arguments are without merit and that the ALJ's ultimate determination as to Beavers' disability status is supported by substantial evidence in the record.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: May 2, 2011

/S/ JAMES P. JONES
United States District Judge